Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
Lisa Cintron (SBN 356009)
*lcintron@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile: 310.474.8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: 917.336.0171
Facsimile: 917.336.0177

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NTSIKELELO BONGA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ntsikelelo Bonga ("Plaintiff"), individually, on behalf of all others similarly situated, and for the benefit of the general public, upon personal knowledge of facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, brings this class action complaint against Defendant Perplexity AI, Inc. ("Perplexity" or "Defendant").

## INTRODUCTION

1. Perplexity offers a paid subscription service known as Perplexity Pro ("Pro") for $20 per month. Yet subscribers are not clearly informed of what their $20 payment entitles them to receive, and Perplexity changes those benefits whenever it chooses, without notice.

2. Perplexity operates the Perplexity platform,[1] "an AI-powered search engine" that "searches the web to deliver accessible, conversational answers backed by verifiable sources."[2] To generate answers to its users' questions, Perplexity integrates other AI models, such as OpenAI's GPT and Anthropic's Claude.[3]

3. Anyone can use Perplexity, but customers must pay for use of advanced Perplexity features beyond certain daily and monthly limits.[4] For example, customers who purchase Perplexity Pro are able to use Pro Search beyond the 3 uses per day permitted to non-paying users.[5]

4. Perplexity built its Pro subscriber base by advertising volume. When it launched its "Deep Research" feature in February 2025, Perplexity told the public that Pro subscribers could run 500 Deep Research queries per day. It marketed Pro as the way to unlock its AI browser and, later, its agentic "Computer" product.

5. Then, in February 2026, Perplexity cut Pro subscribers' Deep Research allowance from hundreds of queries per day to roughly 20 per month. It halved the monthly allowance for its "Labs"

---

[1] https://www.perplexity.ai/ (last accessed Oct. 26, 2026).

[2] *What is Perplexity?*, Perplexity, https://www.perplexity.ai/help-center/en/articles/10352155-what-is-perplexity (last accessed Oct. 26, 2026).

[3] *Id.*

[4] *Which Perplexity Subscription Plan Is Right For You*, Perplexity, https://www.perplexity.ai/help-center/en/articles/11187416-which-perplexity-subscription-plan-is-right-for-you (last accessed Oct. 26, 2026).

[5] *Id.*

feature. It sent subscribers no email and no advance notice. Many subscribers learned of the change when the product stopped working in the middle of periods they had already paid for.

6. Perplexity did not stop there. It now meters Pro subscribers' use of browser-agent tasks, advanced AI models, and Perplexity Computer through weekly allowances and credit balances whose size it refuses to disclose. When Plaintiff asked, Perplexity's support system told him that specific limits are not published, that limits may change, and that no adjustment is available. It told him that the remedy was to upgrade to a plan costing ten times as much.

7. Customers have no recourse as Perplexity reduces their access to advanced Perplexity features. Perplexity is clear—no refunds after 24 hours for monthly subscribers and no refunds after 72 hours for annual subscribers, even when Perplexity reduces what subscribers paid for.[6]

8. Perplexity has every subscriber's email address. It uses those addresses to remind subscribers of upcoming renewal charges and to promote new features. It does not use them to tell subscribers, before they pay again, that what they are paying for has been cut, or how much of it they will actually receive.

9. Perplexity's conduct is ongoing. As recently as September 2026, Perplexity emailed Pro subscribers to remind them of their automatic renewal and to promote "increased Perplexity Computer access," without stating how much access a Pro subscriber receives.

10. Plaintiff seeks a public injunction requiring Perplexity to disclose, in its advertising and before purchase, the usage limits it actually imposes on Pro subscribers. Plaintiff also seeks, for himself and the classes he represents, class-wide injunctive relief, restitution, and damages for what he and other Pro subscribers paid for features Perplexity withdrew or never disclosed.

## PARTIES

### Plaintiff Ntsikelelo Bonga

11. Plaintiff Ntsikelelo Bonga is a citizen of the State of Illinois, residing in Jackson County, Illinois. In or around October 2025, Mr. Bonga enrolled in Pro through a PayPal promotion (described in paragraph 26 below), which provided twelve months of Pro at no charge and then renewed automatically

---

[6] *Refunds*, Perplexity, https://www.perplexity.ai/help-center/en/articles/10354288-refunds (last accessed Oct. 26, 2026).

at the standard paid rate. He chose Pro because Perplexity advertised it as access to many leading AI models in one place, together with an AI browser assistant. Perplexity did not disclose to him any limit on browser-agent tasks, or that it could reduce Pro's limits during a subscription period.

12. In or around February 2026, Perplexity began refusing Mr. Bonga's browser-agent requests, telling him he had reached a "monthly limit for automated browser tasks." When he asked Perplexity support on February 11, 2026, for the limit, where it was disclosed, and a fair remedy, Perplexity refused to disclose or adjust the limit, told him to upgrade to Max, and never connected him with a human representative. When he asked again on September 9, 2026, Perplexity again declined to disclose the limit. When he asked on September 23, 2026, why subscribers had not been told of the change, Perplexity did not respond.

13. Mr. Bonga remains a Pro subscriber and would like to continue using Pro. Before each monthly renewal, however, he has no way to know what Pro will actually provide. Perplexity has refused in writing to tell him his limits, and it changes them without notice. He therefore cannot rely on Perplexity's descriptions of Pro in deciding whether to keep paying, and he faces a continuing risk of paying for features that Perplexity will reduce or withhold. If Perplexity disclosed its limits and gave advance notice of reductions, he could make an informed decision at each renewal.

14. When Mr. Bonga's promotional period ended, his subscription renewed at the standard paid rate, and Perplexity charged him on October 6, 2026. Had Perplexity disclosed the limits it actually imposed, and its practice of reducing them without notice, Mr. Bonga would not have enrolled in Pro or allowed his subscription to renew at the paid rate, or would have paid less for it. He lost money in the amount of the subscription fees attributable to Perplexity's conduct.

**Defendant Perplexity AI, Inc.**

15. Defendant Perplexity AI, Inc. is a Delaware corporation with its principal place of business located at 115 Sansome Street, Suite 900, San Francisco, California 94104. Perplexity develops, markets, and sells the Perplexity answer engine, the Perplexity mobile applications, the Comet browser, and Perplexity Computer, and sells paid subscriptions to them throughout the United States. On information and belief, Perplexity's decisions concerning the subscription plans, usage limits, marketing, and subscriber communications at issue were made and implemented in California.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action in which: (a) there are 100 or more members in the proposed classes; (b) at least one member of the proposed classes, including Plaintiff, is a citizen of a State different from Defendant, which is a citizen of Delaware and California; and (c) the claims of the proposed class members exceed the sum or value of $5,000,000, exclusive of interest and costs.

17. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District, maintains its principal place of business in this District, conducts substantial business in this District, and directed the conduct giving rise to Plaintiff's claims from this District.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District, *see* 28 U.S.C. § 1391(c)(2), and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendant's headquarters are located in this District, and Defendant operates its platform and markets its services from this District.

## DIVISIONAL ASSIGNMENT

19. Divisional assignment to the San Francisco Division is proper under Civil Local Rule 3-2(c) and (d) because Defendant is headquartered in San Francisco County, where a substantial part of the events giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

### A. Perplexity Sold Pro by Advertising How Much Subscribers Could Use It

20. Perplexity operates a search engine that provides answers generated by artificial intelligence, available through its website, mobile applications, and Comet browser. Users can use the Perplexity search engine for free, but Perplexity requires users to pay for more advanced features. Pro costs $20 per month or $200 per year and is sold directly by Perplexity and through the Apple App Store, Google Play, and PayPal.

21. Users pay for Perplexity's advanced features for complex tasks and projects that cannot be adequately addressed by the free version of Perplexity. The central difference between the free product

and Pro is quantity: how many advanced searches, research reports, file uploads, and agent tasks a user may run. Perplexity's marketing of Pro has therefore rested on how much more a subscriber can do.

22. Perplexity promises that Pro Search delivers "nuanced, thorough answers to complex questions within seconds."[7]

23. On February 14, 2025, Perplexity launched Deep Research, a feature that runs many searches and produces a written research report. Perplexity publicly announced that non-subscribers could run 5 Deep Research queries per day and Pro subscribers could run 500 per day.[8]

24. On information and belief, during the same period Perplexity's Pro plan page and Help Center advertised "300+" Pro Searches per day for Pro subscribers.[9]

## B. Perplexity Sold Pro as the Gateway to Its Agentic Features

25. Beginning in 2025, Perplexity marketed Pro as the way to access its "agentic" features, which perform tasks on a user's behalf. These include the Comet browser's built-in assistant, which can browse websites and complete multi-step tasks, and later Perplexity Computer.

26. On September 3, 2025, PayPal announced a promotion, made in partnership with Perplexity, that bundled twelve months of Pro with early access to the Comet browser.[10] After the promotional period, these subscriptions renew automatically at the standard paid rate.

27. Perplexity launched Perplexity Computer, an agent that executes multi-step projects, for its $200-per-month Max subscribers on February 25, 2026, and extended it to Pro subscribers in March 2026.[11]

---

[7] *What is Pro Search?*, Perplexity, https://www.perplexity.ai/help-center/en/articles/10352903-what-is-pro-search (last accessed Sept. 16, 2026).

[8] *Tom's Guide*, https://www.tomsguide.com/ai/perplexity-ais-deep-research-feature-is-available-now-heres-how-to-try-it-for-free (last accessed Oct. 26, 2026).

[9] *Fast.io*, https://fast.io/resources/perplexity-pro-limits/ (last accessed Oct. 26, 2026).

[10] *PayPal Newsroom* (Sept. 3, 2025), https://newsroom.paypal-corp.com/2025-09-03-Skip-the-Waitlist-PayPal-and-Venmo-Users-Offered-Early-Access-to-Perplexitys-New-Comet-Browser-with-Free-Perplexity-Pro-Subscription (last accessed Oct. 26, 2026).

[11] *Second Talent*, https://www.secondtalent.com/resources/perplexity-ai-features/ (last accessed Oct. 26, 2026); *Substack* (citing Perplexity's changelog dated Mar. 13, 2026), https://karozieminski.substack.com/p/perplexity-computer-pricing-credits-2026 (last accessed Oct. 26, 2026).

28. Perplexity Computer runs on credits that Perplexity sells at 100 credits per dollar. Perplexity's plan page sells Pro with "expanded" Computer access and a one-time bonus credit grant, while Pro's included usage is a weekly allowance that resets and does not roll over.[12] On information and belief, Perplexity does not disclose to Pro subscribers, before purchase or renewal, how large that weekly allowance is. Requests made through the Comet assistant's task mode draw on the same allowance.

### C. Perplexity Does Not Disclose Its Limits When Customers Buy

29. When Perplexity customers choose to upgrade to a paid subscription from the Perplexity landing page, they are not told what limits apply to the advanced features they are buying or that their access to those features may be curbed.[13] Perplexity tells customers that they will have "access to the latest AI models" and that they can select which model, including Claude, Gemini, and Sonar, they wish to use.[14]

30. Perplexity possesses every subscriber's email address. It communicates with subscribers directly by email and within the product, including through renewal reminders that describe what Pro includes and in-product prompts to upgrade or buy credits.

31. Perplexity could have told subscribers, through these same channels and at no cost, the usage limits that applied to their subscriptions and any reduction in those limits before it took effect. It chose not to.

### D. In February 2026, Perplexity Silently Cut the Pro Plan

32. In or around early February 2026, Perplexity reduced Pro subscribers' Deep Research allowance from roughly 500 queries per day to approximately 20 per month, and reduced the Labs allowance from 50 to 25 per month.[15]

---

[12] *Fello AI*, https://felloai.com/perplexity-computer/ (last accessed Oct. 26, 2026).

[13] *Select Your Plan*, Perplexity, https://www.perplexity.ai/onboarding?redirect=https%3A%2F%2Fwww.perplexity.ai%2Fhub%2Fpricing%3Flogin-source%3DpricingTable%26login-new%3Dtrue%23locale%3Den-US&plan=personal (last accessed Oct. 26, 2026).

[14] *See id.*

[15] *AI Limit Watch*, https://ailimit.watch/tools/perplexity/ (last accessed Oct. 26, 2026); *MakeUseOf*, https://www.makeuseof.com/bought-annual-perplexity-subscription-lied/ (last accessed Oct. 26, 2026).

33. Perplexity did not email Pro subscribers, post a prominent notice, or otherwise notify them before the reductions took effect. On information and belief, many subscribers, including annual subscribers who had prepaid for twelve months, learned of the change only when the product refused their requests partway through a period they had already paid for.

34. Perplexity later explained the change on its Help Center page describing Advanced Deep Research: "Usage limits have been adjusted to allocate more computing power per session."[16] That explanation came after the fact and does not state the new limits.

35. A subscriber who could run hundreds of research reports per day, and paid for that capability, was left with a few per month, and with an invitation to upgrade to Perplexity Max at $200 per month.

## E. Perplexity Refuses to Tell Subscribers What Their Limits Are

36. Since the February 2026 reductions, Perplexity has stopped publishing numeric limits for Pro. On information and belief, its Help Center page describing Pro, as updated in July 2026, describes Pro's searches, research, and uploads only in general terms such as "extended access" and "increased," and warns that access to advanced models may be limited in weeks of heavy usage.[17]

37. Perplexity's customer support confirms that this nondisclosure is deliberate. On February 11, 2026, in response to Plaintiff's written request for the numeric limit on his Pro plan, Perplexity's support system stated that, "[f]or operational reasons, specific limit amounts aren't disclosed." Later that day it stated that usage limits are part of Perplexity's platform design, "though specific numbers aren't published in our marketing materials."

38. The same support system told Plaintiff that the limits "may change occasionally," that the limits "are standard across all Pro subscriptions," that Perplexity was "unable to process usage adjustments," and that he should upgrade to Max for higher limits. It also stated that Perplexity was

---

[16] *What's New in Advanced Deep Research*, Perplexity, https://www.perplexity.ai/help-center/en/articles/13600190-what-s-new-in-advanced-deep-research (last accessed Oct. 28, 2026).

[17] *What is Perplexity Pro?*, Perplexity, https://www.perplexity.ai/help-center/en/articles/10352901-what-is-perplexity-pro (last accessed Oct. 28, 2026).

"implementing clearer UI changes" so subscribers would be "more aware of [their] usage before hitting the limit"—confirming that Pro subscribers had no way to see their remaining allowance.

39. Plaintiff repeatedly asked to speak with a human representative. Perplexity did not connect him with one.

40. On September 9, 2026, Perplexity's support system told Plaintiff that the browser feature "can stop working on Pro when you've reached the browser agent usage limit for your plan," that specific numeric limits are not disclosed for Pro, that Perplexity cannot add usage or adjust the allowance, and that Max offers higher limits.

### F. Perplexity Sets Limits Account-by-Account Without Notice

41. In May 2026, many Pro subscribers found that their weekly allowance for advanced AI models was exhausted after only a handful of queries. Perplexity did not announce any change. Only after a technology publication asked did Perplexity confirm that it had altered limits for accounts tied to promotional codes.[18]

42. This episode confirms that Perplexity treats the Pro allowance as a variable it may lower, for all subscribers or for chosen groups of them, at any time and without telling them. Subscribers who obtained Pro through partner promotions, such as the PayPal promotion described above, are later converted to paying subscribers at the full monthly rate.

### G. Undisclosed Limits Drive Upgrades and Credit Purchases

43. When a Pro subscriber reaches an undisclosed limit, Perplexity directs the subscriber to pay more, including by upgrading to Max at $200 per month. On information and belief, Perplexity also prompts Pro subscribers who reach their Computer allowance to buy credits.

44. Because the limits are undisclosed, subscribers cannot know before purchase or renewal whether Pro will meet their needs, cannot budget their use, and cannot tell when Perplexity has reduced what they receive.

---

[18] *Android Authority*, https://www.androidauthority.com/perplexity-usage-limits-promo-code-crackdown-3668441/ (last accessed Oct. 26, 2026).

**H. <u>Perplexity's Conduct Continues</u>**

45. On September 5, 2026, as Plaintiff's twelve-month promotional period neared its end, Perplexity emailed Plaintiff that his Pro subscription would automatically renew for $20.00 plus tax on October 6, 2026, "unlocking" continued access to top AI models, advanced research tools, and "increased Perplexity Computer access." The email did not disclose any usage limit for any feature. Perplexity charged Plaintiff on October 6, 2026, converting his promotional subscription to a paid subscription. That was the first time Perplexity charged Plaintiff for Pro.

46. On information and belief, Perplexity sends materially identical renewal reminders to Pro subscribers nationwide.

**I. <u>Perplexity's Omissions Were Material and Perplexity Profited from Them</u>**

47. The amount of use a subscription provides is a material term to any reasonable consumer deciding whether to buy or renew a usage-based software subscription. A reasonable consumer would want to know, before paying, how many research reports, agent tasks, and advanced-model queries $20 buys, and whether Perplexity may reduce those amounts mid-subscription without notice.

48. Perplexity alone knew its actual limits, when it planned to change them, and how it allocated them among subscribers. Subscribers could not discover that information before purchase, and Perplexity refused to provide it even when asked.

49. Perplexity pays other AI companies to use their models.[19] Generating answers from those models is costly.[20] When Perplexity reduces the advanced usage available to Pro subscribers, it reduces what it pays to provide the service its subscribers paid for.

50. Perplexity also benefits from its subscribers' use of its platform. By default, Perplexity collects and uses customer data to train its AI models.[21]

51. On information and belief, Perplexity benefited from its conduct by collecting subscription fees for features it later withdrew, by retaining subscribers who would have canceled had they been told,

---

[19] *Agent API Models*, Perplexity, https://docs.perplexity.ai/docs/agent-api/models (last accessed Sept. 16, 2026).

[20] *Id.*

[21] *Perplexity Pro*, Perplexity, https://www.perplexity.ai/pro (last accessed Sept. 16, 2026).

by reducing the computing costs of serving paid subscribers, and by inducing subscribers to purchase higher-priced plans and credits.

## CLASS ALLEGATIONS

52. Plaintiff brings this action individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of himself and the following Class:

> **Nationwide Class**
> All natural persons residing in the United States who purchased a Perplexity Pro subscription within the applicable limitations period (the "Nationwide Class").
>
> **Illinois Subclass**
> All natural persons residing in the State of Illinois who purchased a Perplexity Pro subscription within the applicable limitations period (the "Illinois Subclass").

The "Nationwide Class" and "Illinois Subclass" are referred to herein as the "Class."

53. Excluded from the Class are Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families.

54. Plaintiff reserves the right to expand, limit, modify, or amend the proposed definitions of the classes or subclasses before the Court determines whether certification is appropriate.

55. The Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and (b)(3) for all of the following reasons:

56. Numerosity. Although the exact number of Class members is uncertain, and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable, believed to amount to many thousands of persons. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and the Court. Information concerning the exact size of the Class is within the possession of Defendant. The parties will be able to identify each member of the Class through discovery, including through Defendant's document production and/or related discovery.

57. Commonality. There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

a. Whether Perplexity reduced Pro usage allowances without notice to subscribers;

b. Whether Perplexity's failure to disclose Pro usage limits, before purchase and renewal, was likely to deceive a reasonable consumer;

c. Whether the omitted information was material;

d. Whether Perplexity had a duty to disclose its usage limits and reductions to them;

e. Whether Perplexity's conduct was unlawful, unfair, or fraudulent under California law;

f. Whether Perplexity's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

g. Whether Perplexity was unjustly enriched; and

h. The proper measure of restitution and damages, and the appropriate injunctive relief.

58. Typicality. All of Plaintiff's claims are typical of the claims of the proposed Class he seeks to represent in that: Plaintiff's claims arise from the same practice or course of conduct that forms the basis of the Class's claims; Plaintiff's claims are based upon the same legal and remedial theories as the proposed Class and involve similar factual circumstances; there is no antagonism between the interests of Plaintiff and absent Class members; the injuries that Plaintiff suffered are similar to the injuries that Class members have suffered.

59. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class he seeks to represent. Plaintiff has retained counsel experienced in complex class action litigation, including consumer protection cases. Plaintiff has no interests that are contrary to or in conflict with those of the Class.

60. Predominance. The proposed class action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions which may affect only individual Class members. Restitution and damages can be measured classwide from Perplexity's records of subscription prices and allowances, including by the difference between the price paid for Pro and the value of Pro as provided after the undisclosed reductions.

61. Superiority. The proposed class action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member. Absent a class action, the majority of class members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

62. Plaintiff's claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Defendant. Varying adjudications could establish incompatible standards with respect to: whether Defendant's ongoing conduct violates the claims alleged herein; and whether the injuries suffered by Class members are legally cognizable, among others. Prosecution of separate actions by individual class members would also create a risk of individual adjudications that would be dispositive of the interests of other Class members not parties to the individual adjudications, or substantially impair or impede the ability of Class members to protect their interests.

63. Injunctive Relief. This action also satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making final injunctive relief appropriate with respect to each class as a whole. Class members continue to face ongoing harm from Defendant's limitations on their use of the Pro features for which they paid.

64. Choice of Law. California law applies to the claims of the Class because Perplexity is headquartered in California and the conduct at issue emanated from California, including the decisions to reduce Pro allowances and to withhold limits, and the creation and dissemination of Perplexity's marketing and subscriber communications. Illinois law applies to the claims of the Illinois Subclass.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.***
**(Public Injunctive Relief Only — Plaintiff, Individually, for the Benefit of the General Public)**

65. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

66. Perplexity is a "person" within the meaning of Cal. Bus. & Prof. Code § 17201. Its marketing, sale, and administration of Pro subscriptions, including the setting, reduction, and nondisclosure of Pro usage limits, are business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200.

67. The UCL defines unfair competition to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Perplexity's conduct violates each prong.

68. Perplexity's conduct emanated from California. As alleged in paragraphs 15 and 64, Perplexity is headquartered in San Francisco, and its decisions to set and reduce Pro usage limits, to withhold those limits from subscribers, and to create and disseminate its marketing and subscriber communications were made and implemented in California.

69. Unlawful. Perplexity's conduct is unlawful under California's Unfair Competition Law ("UCL") because it violates California's False Advertising Law ("FAL"), as alleged in the Second Cause of Action.

70. Fraudulent. Perplexity's marketing of Pro, including its plan page, Help Center, in-app upgrade prompts, partner promotions, and renewal communications, was likely to deceive reasonable consumers. It promoted Pro's research, model, browser-agent, and Computer features while omitting that each was subject to undisclosed limits that Perplexity could and did reduce without notice. The omitted facts go to the central function of Pro, which is to provide a quantity of advanced use greater than the free product. Perplexity had a duty to disclose these facts for four reasons: they were material; they were exclusively within Perplexity's knowledge; Perplexity made partial representations about Pro's features

that were misleading without them; and Perplexity actively concealed them, including by refusing to disclose them when subscribers asked.

71. Perplexity's statements about Pro were, at best, half-truths. Among other things, Perplexity (a) announced at the launch of Deep Research that Pro subscribers could run 500 Deep Research queries per day; (b) advertised "300+" Pro Searches per day for Pro subscribers; (c) sold Pro with "expanded" Perplexity Computer access; (d) told prospective subscribers at the point of purchase that Pro provides "access to the latest AI models"; (e) described Pro's searches and research in its Help Center as "extended access"; and (f) told subscribers in renewal reminders that renewing would unlock "increased Perplexity Computer access." Each statement described the volume or breadth of Pro's advanced features without disclosing the limits that governed them, that Perplexity had reduced and could reduce those limits during a paid subscription period, or that Perplexity applied different limits to different groups of subscribers.

72. A reasonable consumer would understand those statements to mean that Pro provided a meaningful and stable quantity of advanced use for the subscription period being purchased. In fact, Perplexity cut Pro's Deep Research allowance from roughly 500 queries per day to approximately 20 per month and halved Pro's Labs allowance without notice; metered browser-agent tasks, advanced models, and Perplexity Computer through allowances it refused to disclose; and changed allowances for groups of subscribers without announcement.

73. The omitted facts were material. The quantity of advanced use is the central difference between the free product and Pro, and it is a term any reasonable consumer would want to know before buying or renewing a usage-based subscription. Because the omitted information was material, Plaintiff's reliance on Perplexity's omissions may be presumed or inferred.

74. Plaintiff could not have discovered the omitted facts before enrolling in Pro, and he could not learn the actual limits before his subscription renewed at the paid rate. Perplexity did not publish the limits, did not display subscribers' remaining allowances, and refused to disclose the limits even in response to Plaintiff's direct written requests.

75. <u>Unfair</u>. Perplexity's conduct offends the public policy, reflected in California's Consumers Legal Remedies Act and the FAL, that consumers be told the material terms of recurring subscriptions.

Its harm to consumers outweighs any utility, and consumers could not reasonably avoid it because the limits were hidden from them.

76. The harm Perplexity's conduct causes consumers outweighs any utility of that conduct. Subscribers paid for advanced features whose quantity Perplexity concealed and then reduced, including during periods they had already paid for, without any refund. Perplexity, by contrast, collected subscription revenue it would not otherwise have received, reduced its own computing costs, and steered subscribers toward higher-priced plans and credit purchases. There is no legitimate justification for concealing usage limits from the consumers paying for them.

77. Consumers could not reasonably have avoided the injury because Perplexity alone knew its limits, when it would change them, and how it allocated them among subscribers, and it refused to disclose them when asked.

78. Perplexity had reasonably available alternatives that would have served any legitimate business interest. It could have disclosed numeric limits in its marketing and before purchase, displayed subscribers' remaining allowances in the product, and notified subscribers by email before reducing any allowance, through channels it already uses and at no meaningful cost.

79. Plaintiff lost money or property as a result of Perplexity's conduct, including the amount Perplexity charged him when his subscription renewed at the paid rate on October 6, 2026.

80. Perplexity's conduct is ongoing. Perplexity continues to market and renew Pro without disclosing its usage limits. Plaintiff, who remains a Pro subscriber, cannot rely on Perplexity's descriptions of Pro in deciding whether to keep paying. Absent an injunction, Perplexity will continue to mislead members of the public, including prospective subscribers who have never dealt with it.

81. Plaintiff lacks an adequate remedy at law for the relief sought in this Cause of Action. Damages compensate for past injury; they cannot require Perplexity to disclose its usage limits to the public going forward or prevent Perplexity from misleading prospective subscribers in the future.

82. The sole relief sought in this Cause of Action is public injunctive relief requiring Perplexity to disclose clearly, in its advertising and other marketing of Pro and before any purchase, the numeric usage limits applicable to each Pro feature and that Perplexity may reduce those limits. This relief would benefit the general public, including prospective subscribers who have never dealt with Perplexity.

Plaintiff does not seek restitution, damages, or relief directed only to existing subscribers under this Cause of Action.

## SECOND CAUSE OF ACTION

**Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.***
**(Public Injunctive Relief Only — Plaintiff, Individually, for the Benefit of the General Public)**

83. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

84. The FAL makes it unlawful for any person, with intent to perform services or to induce the public to enter into any obligation relating to them, to make or disseminate, or cause to be made or disseminated, before the public in California, or from California before the public in any state, any statement concerning those services that is untrue or misleading and that is known, or by the exercise of reasonable care should be known, to be untrue or misleading. Cal. Bus. & Prof. Code § 17500.

85. Perplexity is a "person" within the meaning of Cal. Bus. & Prof. Code § 17506.

86. Perplexity disseminated from California advertising for Pro, including its plan page, Help Center, in-app upgrade prompts, partner promotions, and renewal emails. That advertising was untrue or misleading because it promoted Pro's features and capacity while omitting the limits that governed them. Perplexity knew or should have known that this advertising was misleading.

87. Perplexity's advertising for Pro included, among other things, its Deep Research launch announcement; its plan page, onboarding page, and Help Center descriptions of Pro; the promotion it made in partnership with PayPal; and its renewal-reminder emails. Perplexity disseminated this advertising from California, where it is headquartered and where its marketing and subscriber communications are created, to the public throughout the United States.

88. Perplexity's advertising was misleading even where literally true. By describing Pro's research, model, browser-agent, and Computer features in terms of their volume and breadth—500 Deep Research queries per day, "300+" Pro Searches, "expanded" and "increased" Computer access, and "extended access"—while omitting the limits that actually governed those features and Perplexity's practice of reducing them without notice, the advertising was likely to deceive reasonable consumers.

89. Perplexity knew, or by the exercise of reasonable care should have known, that its advertising was untrue or misleading. Perplexity alone set its limits and decided when to change them; its support system acknowledged that specific limit amounts are not disclosed and are not published in Perplexity's marketing materials; and Perplexity continued to promote Pro's capacity after reducing it.

90. Plaintiff relied on Perplexity's advertising in enrolling in Pro and lost money as a result when Perplexity charged him on October 6, 2026.

91. Perplexity's misleading advertising is ongoing, and Plaintiff lacks an adequate remedy at law for the prospective public injunctive relief sought in this Cause of Action, for the reasons alleged in paragraph 81.

92. The sole relief sought in this Cause of Action is the public injunctive relief described in paragraph 82. Plaintiff does not seek restitution or damages under this Cause of Action.

## THIRD CAUSE OF ACTION

**Violation of California's Unfair Competition Law and False Advertising Law**
**(Restitution and Class-Wide Injunctive Relief — On Behalf of Plaintiff and the Nationwide Class)**

93. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

94. For the reasons alleged in the First and Second Causes of Action, Perplexity's conduct violated the UCL and the FAL. Plaintiff and class members lost money as a result, in the form of subscription fees.

95. Perplexity's representations and omissions were uniform. Perplexity sold Pro through the same plan page, Help Center, and in-product upgrade prompts nationwide; sent materially identical renewal reminders to Pro subscribers; applied the February 2026 reductions to Pro subscribers generally; and told Plaintiff that its limits are standard across all Pro subscriptions.

96. Because the omitted facts were material to any reasonable consumer and were withheld uniformly, reliance by Class members may be presumed or inferred.

97. Perplexity's conduct occurred in, was directed from, and emanated from California, where Perplexity is headquartered and where it made and implemented its decisions concerning Pro's subscription plans, usage limits, marketing, and subscriber communications. That California-based conduct was uniform as to Plaintiff and the Class.

98. Plaintiff and Class members paid subscription fees for a quantity of advanced use that Perplexity did not disclose and later reduced, including for periods they had already paid for, and Perplexity retained those fees under its no-refund policy. Restitution can be measured from Perplexity's records of subscription prices and allowances, including by the difference between the price paid for Pro and the value of Pro as actually provided.

99. Plaintiff also seeks, on behalf of the Class, injunctive relief requiring Perplexity to (a) disclose clearly to subscribers, before each renewal, the numeric usage limits applicable to each Pro feature; (b) provide subscribers an in-product display of their remaining allowances; and (c) give subscribers reasonable advance notice by email before reducing any allowance.

100. Class-wide injunctive relief is necessary because Perplexity's conduct toward existing subscribers is ongoing. Perplexity continues to renew Pro subscriptions without disclosing the limits that apply, and existing subscribers, including Plaintiff, cannot know before each renewal what Pro will provide. Restitution of past fees would not remedy that continuing harm.

101. Plaintiff seeks restitution in the alternative to legal remedies, which are inadequate. Restitution under the UCL and FAL does not require individualized proof of reliance by absent class members, is subject to a longer limitations period than several legal claims, and may be measured differently than damages. The Terms of Service Perplexity publishes (the "Terms") also purport to limit its liability to subscribers to the greater of $100 or the amount paid in the preceding six months.

## FOURTH CAUSE OF ACTION

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.***
**(On Behalf of Plaintiff and the Illinois Subclass)**

102. Plaintiff incorporates paragraphs 1 through 64 as if fully set forth herein.

103. This Cause of Action is brought on behalf of Plaintiff and the Illinois Subclass.

104. Perplexity is a "person" within the meaning of 815 ILCS 505/1(c).

105. Plaintiff and Illinois Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e) because they purchased Pro subscriptions not for resale in the ordinary course of their trade or business but for their own use.

106. Pro subscriptions are "merchandise" within the meaning of 815 ILCS 505/1(b), and Perplexity's advertising, offering, and sale of Pro occurred in the conduct of "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

107. Plaintiff enrolled in Pro, and his subscription renewed at the paid rate, while he resided in Illinois. The transactions of Plaintiff and Illinois Subclass members occurred primarily and substantially in Illinois.

108. Perplexity engaged in deceptive acts and practices, including the concealment, suppression, and omission of material facts concerning Pro's usage limits, with the intent that Plaintiff and Illinois Subclass members rely on those omissions in purchasing and renewing Pro, in violation of 815 ILCS 505/2.

109. Section 2 of the ICFA also makes unlawful any practice described in Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2. Perplexity's conduct falls within that Section because Perplexity (a) represented that Pro had characteristics, benefits, or quantities that it did not have, 815 ILCS 510/2(a)(5); (b) represented that Pro was of a particular standard, quality, or grade when it was of another, 815 ILCS 510/2(a)(7); and (c) engaged in other conduct that similarly created a likelihood of confusion or misunderstanding, 815 ILCS 510/2(a)(12).

110. The material facts Perplexity concealed, suppressed, and omitted include: (a) the numeric usage limits applicable to Pro's Deep Research, Labs, Pro Search, advanced-model, browser-agent, and Perplexity Computer features; (b) that Perplexity had reduced, and would continue to reduce, those limits during paid subscription periods without notice; (c) that Perplexity applied different limits to different groups of subscribers; and (d) that Pro subscribers had no way to see their remaining allowances.

111. Perplexity intended that Plaintiff and Illinois Subclass members rely on its omissions. Perplexity knew the omitted facts; deliberately withheld them, including in response to direct requests; promoted Pro's capacity in renewal reminders sent shortly before charging subscribers; and directed subscribers who reached undisclosed limits to more expensive plans and credit purchases.

112. The omitted facts were material because a reasonable consumer would consider them important in deciding whether to purchase or renew Pro.

113. Perplexity's conduct was also unfair because it offends public policy requiring disclosure of material subscription terms, is unscrupulous, and caused substantial injury that consumers could not reasonably avoid.

114. Perplexity's conduct is also oppressive. It left consumers without a meaningful choice: Perplexity refused to disclose its limits, refused to adjust them, refused refunds, and offered only an upgrade to a plan costing ten times as much. The resulting injury—subscription fees paid for undisclosed and reduced services—is substantial, could not reasonably have been avoided by consumers, and is not outweighed by any benefit to consumers or competition.

115. Plaintiff and Illinois Subclass members suffered actual damages, including subscription fees paid for undisclosed and reduced services, as a proximate result of Perplexity's conduct.

116. The actual damages of Plaintiff and Illinois Subclass members include the portion of their subscription fees attributable to usage Perplexity did not disclose or later withdrew, and the loss of the benefit of their bargain. Had Perplexity disclosed the omitted facts, they would not have purchased or renewed Pro, or would have paid less for it.

117. Perplexity acted intentionally and in conscious disregard of the rights of Plaintiff and Illinois Subclass members, including by continuing to withhold its limits after subscribers, including Plaintiff, asked for them.

118. Plaintiff and the Illinois Subclass seek actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs under 815 ILCS 505/10a.

## FIFTH CAUSE OF ACTION

**Quasi-Contract / Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

119. Plaintiff incorporates paragraphs 1 through 64 as if fully set forth herein.

120. Plaintiff and class members paid for access to advanced Perplexity platform features. Defendant knowingly accepted and retained those payments.

121. Defendant appreciated and knew of these benefits. It billed and collected subscription fees directly and through the Apple App Store, Google Play, and PayPal, and it sent subscribers renewal reminders before charging them.

122. Defendant also benefits from Plaintiff's and class members' use of the Perplexity platform because Defendant collects data on Plaintiff and class members to improve its AI platform.

123. Once Plaintiff and class members paid for advanced Perplexity platform features, Defendant withheld the features for which they paid by limiting their ability to use those features without disclosure. It would be unjust for Defendant to retain the benefits it received.

124. Defendant's retention of these benefits is unjust. Defendant obtained subscription fees while omitting the limits that governed Pro; withdrew features during periods subscribers had already paid for while refusing refunds; reduced its own costs of serving those subscribers by lowering their allowances; and used undisclosed limits to steer subscribers toward higher-priced plans and credit purchases.

125. Plaintiff and class members seek restitution of the portion of the subscription fees they paid that is attributable to usage Defendant did not disclose or later withdrew, and disgorgement of the benefits Defendant obtained through the conduct alleged herein, in amounts to be determined at trial.

126. Plaintiff does not allege that any express contract governs the conduct at issue. To the extent Perplexity contends that the Terms do, this Cause of Action is pleaded in the alternative, including for subscribers who purchased through the Apple App Store, Google Play, or PayPal, to the extent no enforceable contract was formed with them.

127. Plaintiff seeks restitution on behalf of himself and the classes, in the alternative to legal remedies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and the classes, and for the benefit of the general public, as follows:

a. Certifying that the action may be maintained as a class action, certifying the Class, and appointing Plaintiff as class representative and the undersigned counsel as class counsel to represent the putative Class;

b. Entering the public injunctive relief requested in the First and Second Causes of Action, for the benefit of the general public;

c. Entering class-wide injunctive relief under the Third and Fourth Causes of Action, including under 815 ILCS 505/10a, requiring Perplexity to (1) disclose clearly, before purchase and each renewal, the numeric usage limits applicable to each Pro feature; (2) provide subscribers an in-product display of their remaining allowances; and (3) provide reasonable advance notice by email before reducing any allowance;

d. Awarding Plaintiff and the Class appropriate relief, including actual damages, compensatory damages, and punitive damages, as allowed by law;

e. Awarding restitution and disgorgement, in the alternative to legal remedies;

f. Awarding other equitable relief as necessary to protect the interests of Plaintiff and the Class;

g. Awarding Plaintiff and the classes prejudgment and post-judgment interest;

h. Awarding Plaintiff and the classes their attorneys' fees and costs, as allowable by law; and

i. Awarding such other and further relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff, individually and on behalf of the classes, demands a trial by jury as to all issues triable of right.

DATED: October 28, 2026

Respectfully submitted,

*/s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
Lisa Cintron (SBN 356009)
*lcintron@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile: 310.474.8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: 917.336.0171
Facsimile: 917.336.0177

*Counsel for Plaintiff and the Proposed Class*